**NOT FOR PUBLICATION**                                                    **[1]**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re: | : | |
| | : | Civil Action No. 06-2581 (FLW) |
| MIDSTATE MORTGAGE INVESTORS GROUP, LP, | : | |
| | : | |
| RICHARD B. HONIG and HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP, | : | |
| | : | |
| Appellants, | : | **OPINION** |
| | : | |
| v. | : | |
| | : | |
| PETER J. BROEGE, | : | |
| | : | |
| Appellee. | : | |

**WOLFSON, District Judge**

Appellants Richard B. Honig ("Honig") and Hellring Lindeman Goldstein & Siegal LLP ("Hellring") (Honig and Hellring hereinafter collectively referred to as "Appellants" or "Hellring") appeal an Order of the Bankruptcy Court dated May 19, 2006 granting Appellee Peter J. Broege's ("Appellee" or "Broege") motion to reopen case No. 98-52949, denying Appellants' cross-motion for abstention, and granting a preliminary injunction restraining and enjoining Appellants from prosecuting a third party complaint against Broege in a pending malpractice action in the Superior Court of New Jersey. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a). For the following reasons, the Court will affirm that portion of the

Bankruptcy Court's order reopening the case, reverse the denial of Appellants' cross-motion for abstention and dissolve the restraints entered against Appellants.

## I.  BACKGROUND

The underlying matter in this appeal is a State Court legal malpractice action against Appellants relating to Honig's representation of the Official Committee of Unsecured Creditors (the "Creditors' Committee") in a Chapter 11 Bankruptcy case (the "Midstate case"), docket number 98-52949, which was closed in 2001.  Creditors Lawrence Selinger, D.M.D., Emilia Selinger, George Brennan, M.D., John Sergeant, M.D. and Francis Godfrey, M.D. (collectively, the "Selinger Parties") filed a professional malpractice action against Appellants in the Superior Court of the State of New Jersey (the "state court") alleging that Honig's negligent representation of them in the Midstate case resulted in their inability to enforce personal guarantees against the debtor's limited partners.  Thereafter, Hellring filed a Third Party Complaint in the state court malpractice action against Peter Broege, Esq., counsel to the debtor in the Midstate case, seeking indemnification and contribution based on his alleged tortious conduct in procuring the Confirmation Order.

The facts relevant to this Court's ruling are not in serious dispute.  Four creditors, represented by Honig, filed an involuntary petition in bankruptcy for relief under Chapter 11 against Midstate Mortgage Investors Group, L.P. ("debtor") following its default on certain obligations.  Prior to the default, the Selinger Parties had loaned approximately $1.8 million to debtor, a mortgage lender and servicing agent.  The loan was secured by promissory notes personally guaranteed by debtor's two limited partners, Gerald Whiteman and Thomas English, who were non-debtors.

On November 17, 1998, the Bankruptcy Court entered an Order for Relief.  The debtor managed its affairs as a debtor-in-possession until August 8, 2000, when its Plan of Reorganization was confirmed (the "Confirmed Plan").  The Selinger Parties and the Creditors' Committee supported confirmation of the plan.  The Confirmed Plan provided, among other things, that the Selinger Parties would receive 33% of their distribution under the Confirmed Plan on the effective date, with the remaining 67 % of their distribution to be paid 180 days after the effective date.  The Confirmed Plan further provided that the releases of the personal guarantees were to be delivered to Whiteman and English on the effective date of the Confirmed Plan.  In accordance with the terms of the Confirmed Plan, the Selinger Parties executed and delivered general releases during September and October of 2000, releasing Whiteman and English from any liability to the Selinger Parties in connection with the personal guarantees they had previously executed for the benefit of debtor.

On February 28, 2001, Broege, as debtor's counsel, advised Honig that debtor would not be making the second payment under the Confirmed Plan, which was due 180 days after the effective date.  By Order dated March 19, 2001, the Bankruptcy Court entered a Final Decree closing the Midstate case.  On April 4, 2001, Honig, on behalf of the Creditors' Committee, moved to vacate the Final Decree and the Confirmation Order and sought to convert the case from Chapter 11 to Chapter 7, and further moved for judgment against the debtor and its managing partner, Alex Rosen.  Thereafter, on June 11, 2001, the Bankruptcy Court entered an order granting the motion for judgment against debtor and Rosen, and denying as moot the motion to convert the case from Chapter 11 to Chapter 7 and the other relief requested.

On April 11, 2002, the Selinger Parties filed a Complaint in New Jersey Superior Court seeking recovery from Whiteman and English on the personal guarantees.  In response, Whiteman and English moved before the Bankruptcy Court to reopen the Midstate case, enforce the terms of the Confirmed Plan and restrain the Selinger Parties from pursuing the state court law suit.  The Bankruptcy Court granted the motion to reopen and denied the Selinger Parties' cross-motion for abstention.  The Bankruptcy Court concluded that the plan, as confirmed, released Whiteman and English from the personal guarantees and the court further enjoined the Selinger Parties from prosecuting the state court action or instituting any other action that might interfere with the Confirmed Plan or the releases.  The third circuit affirmed that decision on August 5, 2004.

In November 2003, the Selinger Parties instituted the state court legal malpractice action at issue in this appeal.  Appellants filed a third party complaint against Broege in that state court action in December 2004, seeking contribution and indemnification based upon Broege's alleged tortious conduct in the Midstate case.  Specifically, Appellants contend that Broege silently modified the filed plan, without notice to Appellants or the Selinger Parties, to provide for the discharge of Whiteman and English upon confirmation rather than consummation of the Plan.

The events giving rise to the third party complaint span a period from January 2000, when negotiations regarding the treatment to be given to the indebtedness in the Midstate case commenced, to the April 13, 2000 hearing before the Bankruptcy Court on the Disclosure Statement.  Appellants contend that on January 10, 2000, Honig, the Selinger Parties, Broege and Alex Rosen attended a meeting at the office of David Ravin, counsel to Whiteman and English, which resulted in an agreement as to the structure of the Chapter 11 reorganization plan for

4

Midstate.   The plan was set forth in a letter from Broege to Honig and Ravin dated January 14, 2000, wherein Mr. Broege stated, among other things, that the plan would provide for a payment to creditors of approximately 80% of their claims.  Upon confirmation of the plan, the debtor would make a down payment equal to approximately 1/3 of the claim amounts, with the balance to be paid within 180 days of confirmation.  The letter further provided that Whiteman and English were to discharge their mortgage on certain real property owned by Rosen, to allow Rosen to sell the property.  Rosen was to use $200,000 of the sale proceeds to pay claims held by Whiteman and English and the balance was to be made available to satisfy the claims of the other creditors.

By letter dated January 26, 2000, Honig wrote to Broege, advising him that Broege's January 14th letter accurately confirmed the agreement reached at the January 10th meeting and suggesting that Broege commence drafting a plan and disclosure statement.  Broege filed a Plan of Reorganization and Disclosure Statement with the Bankruptcy Court on March 13, 2000 (the "Original Plan").  Appellants contend that the Original Plan was silent as to the liability of Whiteman and English in connection with the guarantees, because it was understood that the releases would be delivered outside the plan after payment of the agreed amounts.

On March 27, 2000, Ravin wrote to Honig stating, "One of the things that is implicit in this settlement that we worked out is that your clients, comprising the Selinger group, will give a Release to Dr. Whiteman and the Estate of Thomas English at the time of confirmation."  By letter dated March 28, 2000, Honig responded to Ravin as follows

> While my clients will execute a release, the release can only be effective upon consummation of the Debtor's Plan and not confirmation.  It is only appropriate for Dr.

> Whiteman and the Estate [of English] to be released when
> payment is made, not when it is promised.  Otherwise, the
> guarantees executed by your clients will be of little value.

By letter dated April 10, 2000, Broege wrote to Ravin, including a "suggested modification" to

the Original Plan which addressed the Whiteman and English guarantees, requiring that they be

delivered at confirmation of the plan.  In response to Broege's suggested modification, Honig

contends that he telephoned Broege to advise him that the Original Plan, filed on March 13,

2000, was acceptable, but that the proposed revisions were not.

On April 13, 2000, Broege appeared before the Bankruptcy Court for a hearing to address the

adequacy of the Disclosure Statement.  At the April 13, 2000, hearing, Broege advised the

Bankruptcy Court that he had a modification to the Original, which he described as follows:

"Your Honor, it's just one small change that is being made to the miscellaneous provisions of . . .

10.5, which relate to the guarantees as being changed to indicate that the joint proponent, the

releases for the joint proponent, Dr. Rosen, would be held in escrow until the plan is

consummated." [T2:6-12].

By Order dated April 25, 2000, the Bankruptcy Court approved the Disclosure Statement

filed on March 13, 2000.  Broege did not file a Modified Plan or Disclosure Statement with the

Bankruptcy Court.  Broege essentially inserted a new page containing the "suggested

modification" that he had attached to his April 10, 2000 letter.  Honig contends that he never

received a copy of the Confirmed Plan into which Broege had inserted the "suggested

modification" and claims that he did not attend the July 13, 2000 hearing regarding plan

confirmation because he was still under the mistaken belief that the Original Plan was before the

Bankruptcy Court.  On August 8, 2000, the Bankruptcy Court signed an Order confirming "the Plan filed March 13, 2000."

Based on the foregoing, Appellants sought indemnification and contribution from Broege in the state court legal malpractice action.  In short, Appellants allege that Broege, in the course of his duties as attorney for the debtor/debtor-in-possession in the administration of the bankruptcy case, committed wrongdoing in connection with the preparation and filing of the Disclosure Statement and Plan of Reorganization and in connection with representations that were made to the Bankruptcy Court at the time of the hearing on the adequacy of the Disclosure Statement. Appellants claimed that Broege's acts and omissions "constituted a fraud on the bankruptcy court, a fraud on [the Selinger Parties] and [Hellring], a breach of fiduciary duty to [the Selinger Parties], a breach of contract, and an intentional or negligent misrepresentation."  On appeal to this Court, Appellants essentially frame their claim against Broege as one involving the New Jersey Rules of Professional Conduct based upon Broege's purported failure to exercise reasonable care to non-clients, the Selinger Parties, when damage to them was foreseeable.

On March 20, 2006, after participating in the state court malpractice action for more than a year, Broege moved to reopen the Midstate case and simultaneously instituted an Adversary Proceeding in which he filed an order to show cause why prosecution of the third party complaint should not be enjoined.  Following a hearing on May 8, 2006, the Bankruptcy Court granted the motion to reopen and entered an order preliminarily enjoining continued prosecution of the third party complaint in the state court legal malpractice action and denying Appellants' cross-motion to abstain.

## II.  JURISDICTION

Jurisdiction of the district courts over appeals from orders of bankruptcy courts is governed by 28 U.S.C. § 158(a), which provides, in relevant part, that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title."  An appeal under 28 U.S.C. § 158(a) "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts . . . ."  28 U.S.C. § 158 (c)(2).   Appeals from the district courts to the courts of appeal are governed by 28 U.S.C. § 1292(a).

Although section 158(a) does not distinguish categories of interlocutory orders as subject to an appeal as of right as does section 1292(a), section 158(c) has nevertheless been interpreted by courts in this circuit to make section 1292(a) applicable to the appellate process described in section 158(a).  See In re Professional Insurance Management, 285 F.3d 268, 282 n.16 (3d Cir. 2002); In re Bertoli, No. 86-4856, 1987 WL 8196 at *4 (D.N.J. March 18, 1987); In re Reliance Acceptance Group, Inc., 235 B.R. 548, 553 (D.Del. 1999).  Thus, where the orders entered in the bankruptcy court are in the form of injunctive relief, the district court, sitting as an appellate court, is authorized under § 1292(a) to hear the appeal without the need to resort to discretion to grant leave to appeal.  Id.

The Bankruptcy Court's order restraining Appellants from prosecuting the third party complaint against Broege unquestionably qualifies as injunctive relief subject to an appeal as of right.  Accordingly, I find that Appellants have the right to appeal to this Court at this time the

Bankruptcy Court's order preliminarily enjoining Appellants from pursuing the third party complaint against Broege in the state court malpractice litigation.[1]

## III.  STANDARD OF REVIEW

"The proper standard of review to be applied by a district court when reviewing a ruling of a bankruptcy court is determined by the nature of the issues presented on appeal." Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee, 321 B.R. 147, 157 (D.N.J. 2005).  Legal conclusions of the bankruptcy court are subject to de novo or plenary review by the district court. Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir.1997); Chemetron Corp. v. Jones, 72 F.3d 341, 345 (3d Cir.1995). The factual determinations of the bankruptcy court are not to be set aside unless "clearly erroneous." See Fed. R. Bankr.P. 8013; Chemetron, 72 F.3d at 345; In re Indian Palms Assocs., Ltd., 61 F.3d 197, 203 (3d Cir.1995).  On review of the factual findings of a bankruptcy court, a district court must "give 'due regard' to the opportunity of that court to judge first-hand the credibility of the witnesses." Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1223 (3d Cir.1995).  Where a matter presents mixed questions of law and fact, it is appropriate to apply the relevant standard to each component of the issue. Chemetron, 72 F.3d at 345.

## IV.  DISCUSSION

The decision by the Bankruptcy Court below to issue the injunction preliminarily enjoining Appellants from pursuing their claims against Broege in the state court malpractice litigation, rested on its conclusion that it had subject matter jurisdiction.  The Bankruptcy Court reasoned

---

[1]        The Court notes that even if it were to determine that the Bankruptcy Court's entry of the preliminary injunction was not appealable as of right, the Court would grant leave to hear an interlocutory appeal under 28 U.S.C. § 158(a)(3) as the issues presented warrant review on the merits.

9

that because the underlying claim against Broege in the state court malpractice action required the court to address whether he had committed fraud in the procurement of the Order of Confirmation, it was a "core" proceeding in that it could not have arisen but for the filing of the Midstate case.  Thus, in reviewing the decision below, this Court must first consider the extent of the Bankruptcy Court's jurisdiction.

The Bankruptcy Courts are outside the purview of the constitutional authority of Article III. Their jurisdiction is governed principally by 28 U.S.C. § 1334.  *In re* Resorts International, 372 F.3d 154, 161 (3d Cir. 2004).  28 U.S.C. § 1334 provides, in pertinent part:

> **1334.  Bankruptcy cases and proceedings**
>
> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
>
> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

"Jurisdiction over Title 11 matters 'lies with the district court.  However, the district court routinely refers most bankruptcy cases to the bankruptcy court.'"  *In re* Guild & Gallery Plus, Inc., 72 F.3d 1171, 1175 (3rd Cir. 1996) (quoting *In re* Marcus Hook Dev. Park, Inc., 943 F.2d 261, 264 n.3 (3d Cir. 1991)); See 28 U.S.C. § 157(a).

"It is well-settled that the bankruptcy court potentially has jurisdiction over four types of title 11 matters, pending referral from the district court: (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related

to a case under title 11." <u>Marcus Hook</u>, 943 F.2d at 264 (footnote omitted).  "Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings." <u>Resorts</u>, 372 F.3d at 162.

It is within this statutory framework that I review whether the bankruptcy court properly concluded that the allegations raised in the third party complaint in the state court malpractice action implicated a "core" matter under 28 U.S.C. § 157.  "Our circuit precedents have 'held that a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." <u>Guild & Gallery Plus</u>, 72 F.3d at 1178 (quoting <u>Marcus Hook</u>, 943 F.2d at 267).  Additionally, a non-exhaustive list of examples of core proceedings is set forth in 28 U.S.C. §157(b)(2).[2]

---

[2] Pursuant to 28 U.S.C. 157(b)(2):

Core proceedings include, but are not limited to –
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

The Bankruptcy Court's determination that the third party complaint fell within its core jurisdiction was based upon the Court's review of the claims raised in the third party complaint. The Bankruptcy Court concluded that although the allegations raised in the state court action "purport[] to sound strictly in state law terms.  As a practical matter . . . several Orders of [the Bankruptcy Court] and several proceedings before [the Bankruptcy Court] are inextricably intertwined with the allegations in the State Court Complaint." [T16:9-13].  This Court's review of the third party complaint leads to the same conclusion.

On appeal, Appellants characterize the third party complaint as one involving "prosaic questions of professional liability, not unique to bankruptcy law or arising under the Bankruptcy Code."  Yet, the indemnification and contribution claims in the third party complaint are based, at least in part, on allegations that Broege's conduct during the bankruptcy confirmation process constituted "a fraud on the bankruptcy court."  The allegations of fraud on the court and/or fraud during the bankruptcy proceedings indeed constitute a collateral attack on the Bankruptcy Court's orders and proceedings bringing the matter within the Bankruptcy Court's core jurisdiction.  The Court notes that were the allegations against Broege limited to claims involving breach of fiduciary duty, breach of contract and intentional and negligent misrepresentation, the Court might reach a different result regarding the jurisdiction of the Bankruptcy Court.

Having determined that the Bankruptcy Court had subject matter jurisdiction, the Court rejects Appellants' contention that the Bankruptcy Court erred in re-opening the Midstate Case. Bankruptcy courts are authorized to reopen closed cases "to administer assets, to accord relief to

---

(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

the debtor, or for other cause."  11 U.S.C. § 350.  "[B]ankruptcy courts have broad discretion to

reopen cases after an estate has been administered."  <u>In re</u> <u>Zinchiak</u>, 406 F.3d 214, 223 (3d Cir.

2005).

    Additionally, I find that Broege qualified as a "party in interest" with respect to the Midstate

case and, therefore, had standing to move before the Bankruptcy Court to reopen the case.

Pursuant to Rule 5010, a bankruptcy "case may be reopened on motion of the debtor or other

party in interest pursuant to § 350(b) of the Code."  "The test to determine whether an entity is a

party in interest is 'whether the prospective party in interest has a sufficient stake in the outcome

of the proceeding so as to require representation.'"  <u>In re</u> <u>Torrez</u>, 132 B.R. 924, 934

(Bankr.E.D.Ca. 1991) (quoting <u>In re</u> <u>Public Serv. Co. of New Hampshire</u>, 88 B.R. 546, 551

(Bankr.D.N.H. 1988)).  Where the Confirmed Plan is subject to collateral attack in state court

and the allegations against debtor's counsel involve fraud on the bankruptcy court, debtors'

counsel retains an interest in the bankruptcy proceeding sufficient to qualify him as a "party in

interest."

    The Court turns now to Appellants' contention that the Bankruptcy Court was obligated to

abstain.  I agree with the Bankruptcy Court's finding that Mandatory abstention under 28 U.S.C.

§ 1334(c)(2) does not apply here because the proceeding is core.  <u>See</u> <u>In re</u> <u>Donington</u>, 194 B.R.

750, 757 (D.N.J. 1996) (recognizing that a core proceeding is not subject to mandatory

abstention).

    I next examine whether the Bankruptcy Court erred in failing to abstain on the basis of

permissive abstention.  The grounds for permissive abstention in bankruptcy cases has been

codified in 28 U.S.C. § 1334(c)(1), which provides:

> Except with respect to a case under chapter 15 of
> title 11, nothing in this section prevents a district
> court in the interest of justice, or in the interest of
> comity with State courts or respect for State law,
> from abstaining from hearing a particular
> proceeding arising under title 11 or arising in or
> related to a case under title 11.

"The leading case to address the issue of the powers given to bankruptcy courts in section 1334(c) noted: 'The Act grants the district court *broad power* to abstain whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.' The abstention provisions of the Act demonstrate the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case. . . .'" Bricker v. Martin, 348 B.R. 28, 33 (W.D.P.A. 2006) (quoting Wood v. Wood, 825 F.2d 90, 93 (5th Cir. 1987))(emphasis in original). Bankruptcy courts are therefore granted broad discretion in determining whether to abstain from adjudicating claims. Id. Thus, this Court reviews the Bankruptcy Court's denial of Appellants' request for abstention for abuse of discretion. Id. "[P]ermissive abstention is just that: 'permissive.' It is a doctrine that permits a court, when equity dictates, to remand a proceeding to state court." In re RBGSC Inv. Corp., 253 B.R. 369, 382 (E.D. Pa 2000).

The factors considered when permissive abstention is requested include: "1) the effect on the efficient administration of the estate if [the court] abstains, 2) the extent to which state law issues predominate over bankruptcy issues, 3) the difficulty or unsettled nature of the relevant state law, 4) whether there is an established state court proceeding on the same issues, 5) any grounds for

federal jurisdiction besides the bankruptcy, 6) the degree of relatedness of the proceeding to the

main bankruptcy case and the substance rather than the form of an allegedly core proceeding, and

7) the likelihood that the bankruptcy proceeding represents forum-shopping by the petitioner."

Balcor/Morristown Ltd. Partnership v. Vector Whippany Assoc., 181 B.R. 781, 793 (D.N.J.

1995).

 In considering Appellants' cross-motion for permissive abstention under the foregoing

factors, the Bankruptcy Court held the following:

> It's important to note for abstention purposes that Mr.
> Broege's Complaint in this court seeks only two forms of
> relief; a finding that the State Court lacks jurisdiction and a
> finding that the allegations against him have already been
> determined.  No one has asked that the State Court matter
> which places much greater reliance on state law and
> contains a jury demand be removed, or at least that has not
> been asked yet.  So while the efficient administration of the
> bankruptcy estate and the existence of potential prejudice to
> the involuntarily removed defendant I suppose supports
> permissive abstention.  The predominance of state law, the
> lack of a jury trial demand in the adversary proceeding and
> the degree of relatedness to the bankruptcy proceeding
> weighs strongly in favor of retention of jurisdiction over the
> Complaint that's currently on file with the Bankruptcy
> Court. [T21:10-24.]

While a bankruptcy court is granted broad discretion in evaluating the request for an abstention

under the relevant criteria, the Court finds that the Bankruptcy Court in this matter abused that

discretion.  In reaching the determination that permissive abstention was not warranted, the

Bankruptcy Court's focus was on the relief sought by Broege in the adversary complaint, which

she described as limited to a finding that the state court lacks jurisdiction and a finding that the

allegations against Broege have already been determined (i.e., *res judicata*).  Were the adversary

complaint narrowly circumscribed to the allegations of fraud on the Bankruptcy Court, this Court might agree with the Bankruptcy Court's assessment. However, I have carefully reviewed Broege's adversary complaint and find that it seeks a ruling from the Bankruptcy Court that any and all state law claims raised in the third party complaint are barred by the doctrine of *res judicata.*

In light of the broad relief sought by Broege in the adversary complaint, I find that the Bankruptcy Court abused its discretion in finding that the relevant factors weighed in favor of abstention. It is significant that a Bankruptcy Court may permissively abstain from any proceeding over which it has jurisdiction, whether core or non-core. Bricker v. Martin, 348 B.R. at 34. Thus, the fact that a proceeding involves a core bankruptcy issue does not require a finding that abstention is improper. Indeed, the Bankruptcy Court recognized when evaluating the first Balcor/Morristown factor that the effect on the efficient administration of the bankruptcy estate supported application of permissive abstention.

A review of the other factors leads to the same conclusion. In examining the second factor – the extent to which state law issues predominate – the Bankruptcy Court held that "the predominance of state law" weighed in favor of retention of jurisdiction. [T21:20]. Presumably, the Bankruptcy Court was referring to the lack of predominance of state law in light of her conclusion with respect to this fact. However, this Court finds that the Bankruptcy Court erred in so finding given the overly broad relief sought in Broege's adversary complaint. This Court does not agree that relief sought by Broege was limited. Indeed, Broege sought by virtue of his adversary complaint to bar any and all state law claims against him. This court finds that while

16

issues may arise in the state court litigation involving his conduct before the Bankruptcy Court, the issues primarily implicate Broege's duties to the Selinger Parties under state law.

Additionally, I find that the adversary proceeding represents forum-shopping by Broege. It is undisputed that Broege participated in the state court malpractice action for nearly a year and a half before seeking to reopen the Midstate case. Indeed, the fact that Broege did not file his motion to reopen essentially until the eve of trial is not lost on this Court. Clearly there was already an established state court proceeding and this Court is unaware of any reason why the state court was ill-equipped to address the issue of *res judicata*. While Broege has continued to assert that the collateral attack may impugn the validity of the Bankruptcy Court's orders and proceedings, that argument falls flat in light of his failure to identify how that could possibly occur in this case where the Confirmation Order is final in all respects and there is no indication that anyone has or will seek disgorgement of the fees awarded to him in the bankruptcy matter. Thus, while the third party complaint may fairly be characterized as a collateral attack on the orders and proceedings in the Midstate case in light of the allegations involving fraud on the Bankrupt Court, this Court finds that degree of relatedness to the bankruptcy case is limited and the matter properly belongs in state court.

Finally, on review of the Bankruptcy Court's decision on the merits of Broege's application for a preliminary injunction, I find that the Bankruptcy Court did not adequately address the elements of injunctive relief. Specifically, the Bankruptcy Court failed to adequately consider the impact on Appellants in balancing the hardships. Additionally, I find that in issuing the preliminary injunction, the Bankruptcy Court improvidently restrained Appellants from prosecuting any claims against Broege, even those involving strictly state law issues. There is

17

simply no justification for the Bankruptcy Court to restrain an action involving state law claims such as breach of contract or breach of fiduciary duty.

## V.  CONCLUSION

For the foregoing reasons, the Court will affirm that portion of the May 19, 2006 order of the Bankruptcy Court reopening the case, reverse the denial of Appellants' cross-motion for abstention and dissolve the restraints entered against Appellants.

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Dated: November 6, 2006